UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

LISA MARTINEZ,                                         :
                                                      :           **REPORT AND RECOMMENDATION**
                          Plaintiff,                  :                  18 Civ. 3075 (DG) (VMS)
                                                      :
                        -against-                     :
                                                      :
LONG ISLAND RAILROAD COMPANY, and                     :
KATHLEEN MEILICK,                                     :
                                                      :
                          Defendants.                 :
--------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Lisa Martinez ("Plaintiff" or "Ms. Martinez") commenced this action against

Defendants the Long Island Railroad Company ("LIRR") and Kathleen Meilick ("Ms. Meilick")

(collectively, "Defendants") asserting discrimination claims under 42 U.S.C. § 1983 ("§ 1983")

and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., in

connection with her employment with the LIRR.  Presently before the Court, on referral[1] is

Plaintiff's motion for leave to file a Second Amended Complaint to add the Metropolitan

Transportation Authority ("MTA") as a Defendant and to add four new causes of action, Counts

III through VI. [2]  For the following reasons, the Court respectfully recommends that Plaintiff's

---

[1] The motion was originally referred to this Court by District Judge Kovner.  The matter was
subsequently reassigned to District Judge Gujarati.

[2] The Court considers the following on this motion: the Proposed Second Amended Complaint;
Plaintiff's Memorandum of Law in Support ("Pl.'s Mem."), ECF No. 61, and exhibits thereto
including Plaintiff's Declaration in Support ("Pl.'s Decl."), ECF No. 61-2; Defendants'
Memorandum of Law in Opposition ("Defs.' Opp."), ECF No. 62; Declaration of Damian R.
Cavaleri in Support of Defendants' Opposition, ECF No. 63, and exhibits thereto; Plaintiff's
Reply Memorandum ("Pl.'s Reply"), ECF No. 68, and exhibits thereto; Defendants' Sur-Reply
in Opposition ("Defs.' Sur-Reply"), ECF No. 74; and Declaration of Damian R. Cavaleri in
Support of Defendants' Sur-Reply, ECF No. 75, and exhibits thereto.

motion be: (1) **GRANTED** as to proposed Count III for retaliation under Title VII and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; (2) **DENIED** with prejudice as to proposed Count VI; and (3) **DENIED** without prejudice and with leave to replead as to (a) proposed Count III for retaliation under § 1983; (b) proposed Count IV; and (c) proposed Count V.  The Court also respectfully recommends that the MTA be joined as a party to the extent indicated below.

## I.  BACKGROUND

### A.  Factual Allegations -- First Amended Complaint

Plaintiff commenced this action on May 24, 2018, see Complaint ("Compl."), ECF No. 1, and filed her First Amended Complaint ("FAC") on June 20, 2018, see ECF No. 9.  The following fact allegations are drawn from the FAC and are accepted as true for purposes of this Report.

Plaintiff, who describes herself as half African-American and dark-skinned, began working in human resources for the LIRR in 2007, was promoted in 2010, and in 2012, was promoted to a Human Resources ("HR") business manager position.  See FAC ¶¶ 2, 17, 19, 22. On or about February 25, 2012, the LIRR promoted Ms. Meilick, who is Caucasian, to serve as Senior Director of Human Resources, a position that included final decision-making authority over all personnel decisions in the HR department, including those involving Plaintiff.  Id. ¶ 24. A colleague thereafter told Plaintiff that for her to be successful in the human resources department, she would have to "act white."  Id. ¶ 25.  In 2013 and 2014, Plaintiff applied for promotions but was not selected; instead, Ms. Meilick promoted less-qualified Caucasian men. Id. ¶¶ 26-28, 30-31.

In January 2016, Plaintiff applied for a promotion to a HR business director position.  Id. ¶ 32.  The LIRR had a policy requiring that all vacant positions be filled within 60 days of posting of the vacancy.  Id.  Plaintiff alleges that this 60-day policy was violated when "not having a suitable non-African-American employee to whom she could offer the position," Ms. Meilick removed the vacancy posting and did not fill the position.  Id. ¶ 33.  Plaintiff learned in December 2016 that the position would not be filled.  Id.[3]

In January 2017, a new HR business director position was posted, and Plaintiff applied for it.  Id. ¶ 34.  During an interview for the position, an interviewer told Plaintiff that she had "no doubt" that Plaintiff could do the job.  Id. ¶ 35.  On or about April 20, 2017, Plaintiff was informed that "Meilick had decided that Plaintiff would not be selected for the HR business director position and that the vacancy would not be filled."  Id. ¶ 36.  Plaintiff alleges that the 60-day policy was again violated because a suitable non-African-American employee was not found.  Id.[4]

On or about April 28, 2017, Ms. Meilick retired.  Id. ¶ 37.  According to Plaintiff, during Ms. Meilick's tenure as the Senior Director of HR, she promoted five non-African-American employees but did not promote any African-American employees.  Id.  Ms. Meilick showed further bias by giving non-African-American employees more expensive holiday presents on at least one occasion.  Id. ¶ 29.

---

[3] Plaintiff's application for a promotion submitted in January 2016 and Defendants' decision in December 2016 not to promote her will be referred to generally as the "2016 Position."

[4] The January 2017 application and April 2017 decision not to promote Plaintiff will be referred to generally as the "2017 Position."

**B. Factual Allegations -- Proposed Second Amended Complaint**

Except where otherwise noted, the following facts are drawn from Plaintiff's Proposed Second Amended Complaint ("PSAC"), see ECF No. 61-1, which are also accepted as true for purposes of this Report. The PSAC supplements the FAC's allegations in the following respects.

**1. General Allegations & Allegations Pertaining To 2016 & 2017 Positions**

In the PSAC, Plaintiff includes allegations about historical patterns of race discrimination in the LIRR's employment practices, highlighting settlement decrees entered at some unspecified time to which the LIRR was a party. PSAC ¶¶ 19, 26-27. She alleges that as a result of the decrees, the LIRR had policies and procedures in place at relevant times designed to prevent those patterns from recurring, including those pertaining to EEO, diversity, panel-interview requirements and preferences for promoting from within. Id. ¶¶ 20, 27. Plaintiff alleges that the discriminatory and retaliatory acts that she suffered arose in part as a result of the LIRR's failure to adhere to these policies and procedures. Id. ¶¶ 21-22, 25-27. Plaintiff quotes the deposition testimony of other LIRR employees including a former LIRR EEO Officer and Diversity Manager who stated that the LIRR "had lots of patterns of discrimination," id. ¶ 20, and an African-American LIRR employee who believes that Ms. Meilick unfairly denied him a promotion that went to a white candidate after a hiring process that did not involve a panel interview, id. ¶ 31. She also alleges that the LIRR "engaged in segregationist practices" such that until recently, "[m]inority employees were physically placed in substandard conditions," id. ¶ 23, and that LIRR employees are "comfortable in uttering racial slurs at the workplace," citing an undated incident where a white supervisor referred to a minority employee given an acting managerial role "as a 'head n[*****],'" id. ¶ 24.

4

As to her specific claims, the PSAC provides no factual enhancement regarding the 2016 Position.  As to employment actions taken against her in relation to the 2017 Position, Plaintiff alleges that Ms. Meilick abandoned the LIRR's policy of promoting from within by hiring an external candidate, Rascheda Wallace, for the position.  Id. ¶ 51.  Ms. Wallace was a less-qualified woman under 40 years of age, id., while Plaintiff at the time was "approximately 50 years of age."  Id. ¶ 9.  Plaintiff alleges that she was discriminated against on the basis of her age, citing Ms. Meilick's explanation for why the younger woman was selected, including that Ms. Wallace was "new" and was going to bring "fresh ideas" and "new ways" of handling the job.  Id. ¶ 53.  Plaintiff further recounts an instance in 2014 when Ms. Meilick told Plaintiff's then-supervisor that Plaintiff, who was over 40 years old at the time, did "not comprehend very well," a remark that Plaintiff alleges "reeks of age discrimination and explains Defendants' age-biased attitude when filling the 2017 position."  Id. ¶ 54.

## 2.  Proposed New Claims & Related Allegations

After this case was commenced in May 2018, Plaintiff alleges that Defendants "began a course of retaliation" against her for exercising her right to sue that included excluding her from certain job functions, and bypassing her to work directly with her subordinates instead of working with her.  PSAC ¶ 74.  In September 2019, a meeting took place, attended by Plaintiff and others, "to ostensibly discuss what it takes for an employee to win a discrimination claim against the LIRR."  Id. ¶¶ 75-76.  At that meeting, Samuel Veytsman, an LIRR attorney, said a race-discrimination claim is not strong enough unless someone repeated an offensive racial slur.  Id. ¶ 76.  Plaintiff alleges that this was meant to convey to her that her lawsuit was not meritorious "because the 'N' word was not used by the LIRR in connection with her case."  Id.

Later in September 2019, Mr. Veytsman visited the office of Plaintiff's supervisor, Mary Lou Centauro, which was adjacent to Plaintiff's office, and discussed Plaintiff's case.  Id. ¶ 77. Prior to meeting with Ms. Centauro, Mr. Veytsman stopped in front of Plaintiff's office and "stared at her, with the clear intent of making her feel unwelcome at her workplace."  Id. ¶ 78. During the meeting with Ms. Centauro, Mr. Veytsman commented that Plaintiff's lawsuit lacked merit and that she was running out of money to litigate it; Plaintiff alleges that these comments were made in a manner so that Plaintiff and her colleagues would overhear them.  Id. ¶¶ 77-78.

Plaintiff alleges additional incidents involving Ms. Centauro starting in October 2019.  In October 2019 and January 2020, Ms. Centauro improperly withheld from Plaintiff two commendations about her performance, one from a vendor and one from a manager.  Id. ¶¶ 79-81.  Plaintiff claims that her supervisor should have directly disclosed them to her for use in promotion applications.  Id. ¶ 79.  She further claims that her office mail was opened in violation of departmental procedure, and that when she raised this complaint with Ms. Centauro in June 2020, the supervisor "merely stated that she 'wasn't aware that you had more than one issue like this.'"  Id. ¶ 82.  Plaintiff also alleges that Ms. Centauro ignored emails sent to her by Plaintiff "unless Ms. Centauro needed assistance" from her.  Id. ¶ 83.  These actions, "including the loud communications by the LIRR lawyer through the thin walls at the department were clearly intended to harass the Plaintiff so that she would leave her job and the LIRR."  Id.

On July 15, 2020, Plaintiff applied for the position of Deputy Chief, HR Operations & Data Analytics with the MTA (the "2020 MTA Position").  Id. ¶ 58.  Two days later on July 17, 2020, a departmental meeting at the LIRR was held to announce a change in the line of reporting within the LIRR.  Id. ¶ 84.  At this meeting, Ms. Centauro "stated that 'there are no promotions and there is no money for anyone.'"  Id.  Plaintiff asserts that it was clear to her and others that

this statement was directed at Plaintiff and that it was made "to further harass the Plaintiff and to chill her out of continuing pursuit of her civil rights claims against the LIRR." Id.

On August 5, 2020, Plaintiff was interviewed for the 2020 MTA Position by Paul Fama, the Chief People Officer at the MTA and, Plaintiff alleges, also the LIRR. Id. ¶¶ 58, 88. Mr. Fama is "the final step in a line of a direct reporting ladder above Plaintiff's level," id. ¶ 91, and was aware that Plaintiff had complained about the denial of a promotion at the LIRR, id. ¶ 88. Plaintiff alleges that the LIRR and the MTA are one integrated enterprise, with the MTA controlling all relevant aspects of LIRR's employment practices. Id. ¶ 5. She points to a September 23, 2020 announcement made by an MTA official, characterizing it as stating that "the MTA and its subsidiaries, including the LIRR have achieved consolidation in 'Diversity & EEO, Legal People [and] Labor Relations.'" Id. (alteration in original). She further alleges that even before this announcement, the "MTA controlled all the pertinent aspects of the employment conditions complained of in this case, including discrimination in promotions, diversity and anti-harassment policies." Id.

On September 17, 2020, Plaintiff was informed that she was not selected for the 2020 MTA Position. Id. ¶ 59. Plaintiff believes that she was denied that position "in retaliation for her pursuit of her discrimination claims at the LIRR." Id. ¶ 61. She also claims that the failure to hire her for the 2020 MTA Position violated the ADEA and Title VII, alleging upon information and belief that the successful candidate was a younger male. Id. ¶ 90.

In October 2020, Mr. Veytsman, the LIRR attorney, sent an e-mail to Plaintiff's department, on which Plaintiff was copied, asking the recipients for information about an allegation that racial slurs had been directed at Plaintiff in the workplace. Id. ¶ 85. Plaintiff claims this email was harassing in that it used "superfluous comments" such as that Plaintiff was

"attempt[ing] to reboot her federal complaint yet again" and that she had given "precious few details" regarding the use of racial slurs.  Id. ¶¶ 85-86.

### C. Procedural History

#### 1. Administrative Filings

In May 2017, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") against "MTA Long Island Rail Road Company," alleging "unlawful discriminatory practice relating to employment because of age, race/color, national origin, opposed discrimination/retaliation."  Verified Complaint ("DHR Compl."), ECF No. 61-3 at 2; FAC ¶ 5.  Plaintiff's May 17, 2017 letter attached to the DHR Complaint sets forth the factual basis for her complaint.  See DHR Compl. at 3-6.   Plaintiff provides examples of "Subtle Harassment" that she allegedly suffered including (1) Ms. Meilick's use of a "condescending tone that was curt and belittling" in reference to Plaintiff's attempt to apply for a position in 2013; (2) Ms. Meilick's use of a "demeaning tone" in discussing Plaintiff's interest in applying for a position in 2014; (3) Ms. Meilick's support of educational goals and professional development of Caucasian managers but not Plaintiff; (4) Ms. Meilick's response in December 2015 to Plaintiff's observation that there was an error in the employment application being used by the company, including that the supervisor "didn't believe me and responded in a condescending tone" and abruptly hung up the telephone.  Id.  Plaintiff's letter attached to the DHR Complaint also included sections regarding the lack of mentoring opportunities, and the failure to promote her to the 2017 Position, allegedly because she had inquired about the status of the opening during the prior year and had advocated for herself.  DHR Compl. at 5-6. Plaintiff's DHR Complaint was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

On January 9, 2018, the DHR issued its Determination and Order after Investigation (the "DHR Decision"), see ECF No. 75-2. The DHR Decision found no evidence to support a claim of discrimination and dismissed the complaint. Id. at 2. In February 2018, the EEOC issued Plaintiff a right-to-sue letter, FAC ¶ 6, and Plaintiff timely commenced this action on May 24, 2018. The original Complaint and FAC, filed on June 20, 2018, alleged that Defendant LIRR had violated her right to be free from race discrimination (i) pursuant to Title VII, see Compl. ¶¶ 38-41, FAC ¶¶ 38-41, and (ii) under the Equal Protection Clause of the Fourteenth Amendment, see id. ¶¶ 42-47.

After Plaintiff filed the instant motion to amend her complaint, she filed a second discrimination and retaliation charge with the EEOC against the MTA and the LIRR for the allegedly discriminatory and retaliatory acts that had occurred since she filed the 2017 DHR Complaint. See EEOC Charge of Discrimination ("2020 EEOC Charge"), ECF No. 68-2. On the 2020 EEOC Charge, Plaintiff ticked off boxes for discrimination based on race, color, sex, retaliation and age, and indicated that the discrimination took place between September 27, 2019 and October 16, 2020. Id. In February 2021, Plaintiff received a right-to-sue letter from the EEOC in connection with the 2020 EEOC Charge. See Pl.'s Reply at 1 n.1; ECF No. 68-1.

### 2. Plaintiff's Legal Representation

At the time the original complaint and FAC were filed, and through the initial period of discovery, Plaintiff was represented by counsel different from her current attorneys. After Defendants filed a premotion conference letter in anticipation of a motion for summary judgment, prior counsel requested leave to withdraw, citing nonpayment of bills and a breakdown in the attorney-client relationship. See ECF Nos. 31, 32. After multiple conferences with the Court to clarify the issues between Plaintiff and her attorneys, including whether

counsel had failed to pursue Plaintiff's theory of the case, her prior counsel was permitted to withdraw.  See Dkt. Entry 3/25/2019; Dkt. Entry 4/25/2019; Dkt. Entry 12/3/2019; ECF Nos. 40, 52, 56.  Plaintiff represented herself pro se for a time, and discovery was reopened.  See ECF No. 53.  Plaintiff's current counsel filed a notice of appearance on June 16, 2020, see ECF No. 54, and discovery was further extended to October 16, 2020.  See Dkt. Entry 7/7/2020.  At the close of discovery, Plaintiff filed the instant motion seeking leave to further amend her complaint.  That motion is fully briefed, including supplemental filings requested by the Court.  See ECF No. 66.

### 3.  Motion To Amend

The FAC stated two claims for race discrimination in violation of Title VII and of 42 U.S.C. § 1983 for Defendants' failure "to promote Plaintiff to a position for which she was qualified on two separate occasions."  FAC ¶¶ 39, 43.  In the instant motion, Plaintiff restates those claims, and seeks to further amend to add the MTA as a named party, and to add four claims for (1) retaliation and retaliatory harassment in violation of Title VII, the ADEA and § 1983, see PSAC ¶¶ 73-91 (Count III); (2) retaliatory hostile work environment in violation of § 1983, see id. ¶¶ 92-95 (Count IV); (3) discrimination as to the failure to promote Plaintiff to the 2020 MTA Position in violation of § 1983, Title VII and the ADEA, see id. ¶¶ 96-100 (Count V); and (4) age discrimination in failing to promote Plaintiff to the 2017 Position in violation of the ADEA, see id. ¶¶ 101-107.

Defendants oppose Plaintiff's motion, arguing that the motion is untimely, see Defs.' Opp. at 5-6; that the amendments would prejudice Defendants in causing further delay and necessitating new discovery, see id. at 6-9; and that the motion is made in bad faith, see id. at 9-12.  They further contend that additional amendment would be futile as Plaintiff fails to allege

10

plausible claims, arguing that any claim under the ADEA arising from the 2017 Position is time-barred, <u>see</u> <u>id.</u> at 12-13; that Plaintiff fails to allege materially adverse actions sufficient to support a claim for retaliation, <u>see</u> <u>id.</u> at 13-16; that Plaintiff has not alleged conduct rising to the level necessary to support a hostile work environment claim, <u>see</u> <u>id.</u> at 16-17; and regarding her claim arising from the denial of her application for the 2020 MTA Position, that the MTA is a separate corporate entity from the LIRR, and in any event, Plaintiff failed to exhaust her administrative remedies as to any discrimination claim, <u>see</u> <u>id.</u> at 18-19.

## II.  LEGAL STANDARDS

### A.  Motion To Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, the court has discretion to allow a party to amend its pleadings and "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  "This permissive standard is consistent with our strong preference for resolving disputes on the merits." <u>Williams v. Citigroup, Inc.</u>, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks & citation omitted).  In determining whether to grant leave to amend, the court must accept the moving party's non-conclusory factual pleadings and draw all reasonable inferences in that party's favor "to determine whether the allegations plausibly give rise to an entitlement to relief." <u>Panther Partners Inc. v. Ikanos Commc'ns, Inc.</u>, 681 F.3d 114, 119 (2d Cir. 2012).  Motions to amend should only be denied "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008).  "With respect to the Rule 15(a) factors, [t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile." <u>Joinnides v. Floral Park-Bellerose Union Sch. Dist.</u>, No. 12 Civ.

5682 (JS) (AKT), 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015) (internal quotation marks & citation omitted; alteration in original).

A motion to amend will be considered futile if the court determines, "as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Panther Partners, 681 F.3d at 119. Substantial delay warranting denial of a motion to amend may be found "where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading." Coggins v. Cnty. of Nassau, 254 F. Supp. 3d 500, 508 (E.D.N.Y. 2017) (internal quotation marks & citation omitted). Further, "'the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" Id. (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). The "prejudice to the opposing party resulting from a proposed amendment [is] among the most important reasons to deny leave to amend." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (internal quotation marks & citation omitted). "Undue prejudice exists where 'an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of a dispute.'" Hadid v. City of New York, 182 F. Supp. 3d 4, 8 (E.D.N.Y. 2016) (quoting Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008)), aff'd, 730 F. App'x 68 (2d Cir. 2018).

### B. Adding Or Joining The MTA As A Party

Plaintiff seeks to add the MTA as a party pursuant to Rule 21 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; see Jipeng Du v. Wan Sang

Chow, No. 18 Civ. 1692 (ADS) (AKT), 2019 WL 3767536, at *5 (E.D.N.Y. Aug. 9, 2019)

(where "a proposed amendment adds a new party, the propriety of amendment is governed by

Rule 21").  In deciding whether to permit the addition of a new defendant under Rule 21, "courts

apply the same standard of liberality afforded to motions to amend pleadings under Rule 15."

Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 79 (E.D.N.Y. 2011) (internal quotation marks

& citation omitted).  "Although Rule 21 'contains no restrictions on when motions to add or drop

parties must be made, the timing of the motion may influence the court's discretion in

determining to grant it.  Thus, the court typically will deny a request that comes so late in the

litigation that it will delay the case or prejudice any of the parties to the action.'"  City of

Syracuse v. Onondaga Cnty., 464 F.3d 297, 308 (2d Cir. 2006) (quoting 7 Wright, Miller &

Kane § 1688.1 at 510).

> Rule 20(a) permits the joinder of a party under the following circumstances:
>
> Defendants . . . may be joined in one action . . . if: (A) any right to relief is
> asserted against them jointly, severally, or in the alternative with respect to
> or arising out of the same transaction, occurrence, or series of transactions
> or occurrences; and (B) any question of law or fact common to all
> defendants will arise in this action.

Fed. R. Civ. P. 20(a)(2).  "While there is no rigid rule as to what constitutes the same series of

transactions or occurrences, courts repeatedly have interpreted the phrase 'same transaction' to

encompass all logically related claims."  Washington v. City of New York, No. 18 Civ. 12306

(CM), 2019 WL 2120524, at *38 (S.D.N.Y. Apr. 30, 2019) (quotations, alterations & citations

omitted).  Whether circumstances constitute a single occurrence is determined on a case-by-case

basis.  Id.; see Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 477-78 (S.D.N.Y. 2013) (denying

motion to sever, finding allegations that "company-wide employment policies have resulted in

employment discrimination" and "considerations of judicial economy" sufficient to justify

joinder of multiple discrimination claims from different plaintiffs).

### C. Discrimination Claims

Plaintiff seeks to add a claim, proposed Count V, under Title VII, the ADEA and § 1983 alleging that the denial of her application for the 2020 MTA Position was the result of discrimination based on her race and age.

Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA's anti-discrimination provision similarly prohibits employers from "discharg[ing] an individual or otherwise discriminat[ing] against any individual with respect to his compensation, or terms, condition, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). To establish a § 1983 claim, a plaintiff must show (1) the deprivation of a right, privilege, or immunity secured by the Constitution and laws by (2) a person acting under the color of state law. See 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). Plaintiff alleges that Defendants discriminated against her by reason of her race in violation of the Equal Protection Clause, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1, and has as its "central purpose . . . the prevention of official conduct discriminating on the basis of race . . . ." Washington v. Davis, 426 U.S. 229, 239 (1976). To prevail, a plaintiff must show that she was "selectively treated compared with other similarly situated employees, and that selective treatment was based

on impermissible considerations such as race . . . ."  Hicks v. Baines, 593 F.3d 159, 171 (2d Cir.

2010) (internal quotation marks & citation omitted).  "[O]nce the color of state law requirement

is met, except for the issue of individual liability, an equal protection claim parallels [a

plaintiff's] Title VII claim."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 82 (2d Cir.

2015) (internal quotation marks & citation omitted; alteration in original).

    All three bases asserted for discrimination claims by Plaintiff are analyzed under the

McDonnell Douglas burden-shifting framework.  See Vega, 801 F.3d at 82-83 (citing

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); Lively v. WAFRA Inv. Advisory

Grp., Inc., 6 F.4th 293, 302 n.3 (2d Cir. 2021); Naumovski v. Norris, 934 F.3d 200, 214 (2d Cir.

2019) (courts "employ the McDonnell Douglas framework to analyze § 1983 claims"); Sutter v.

Dibello, No. 18 Civ. 817 (ADS) (AKT), 2019 WL 4195303, at *19 (E.D.N.Y. Aug. 12, 2019)

("Claims for discrimination, retaliation, and hostile work environment brought pursuant to

Section 1983 for Fourteenth Amendment violations are analyzed under the same framework as

discrimination, retaliation, and hostile work environment claims brought under Title VII."),

report & recommendation adopted, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019).  To state a

prima facie case of discrimination for failure to promote under each of these statutes, a plaintiff

must demonstrate that (1) she is a member of a protected class or age group; (2) she was

qualified for the job in question; (3) she experienced an adverse employment action when she did

not get the job; and (4) that the action occurred under circumstances giving rise to an inference

of discrimination.  See Bockus v. Maple Pro, Inc., 850 F. App'x 48, 51 (2d Cir. 2021) (summary

order); Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004); Szewczyk v. City

of New York, No. 15 Civ. 918 (MKB), 2021 WL 2010504, at *4 (E.D.N.Y. Feb. 23, 2021).

    The three statutory claims do not, however, use the same causation standard.  For a Title

VII claim, "at the initial stage of the litigation . . . the plaintiff does not need substantial evidence of discriminatory intent" but may satisfy the prima facie requirements by, inter alia, "sustain[ing] a minimal burden of showing facts suggesting an inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original).  A discrimination complaint must still "at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (alterations & internal quotation marks omitted).   In contrast, for claims under the ADEA and § 1983, a plaintiff "must allege 'that age was the 'but-for' cause of the employer's adverse action.'" Vega, 801 F.3d at 86 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)); see Naumovski, 934 F.3d at 214 (under § 1983, plaintiffs have a "higher burden" of proving that "the individual's discriminatory intent was a 'but-for' cause of the adverse employment action" (emphasis in original)).  "[T]he but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well." Lively, 6 F.4th at 303 (citing Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, -- U.S. --, 140 S. Ct. 1009, 1014 (2020)).

## D.  Retaliation Claims

Plaintiff alleges that she was retaliated against in violation of Title VII, § 1983 and the ADEA.  Title VII and the ADEA both contain anti-retaliation provisions.  Title VII makes it unlawful "for an employer to discriminate against any . . . employee[] . . . because [that individual] opposed any practice" made unlawful by Title VII, or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding.  42 U.S.C. § 2000e-3(a).  The ADEA states that an employer may not "discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by [§ 623 of the ADEA]."  29

16

U.S.C. § 623(d).  Plaintiff also claims that the retaliatory conduct of Defendants constituted a violation of the Equal Protection Clause.  "[R]etaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983."  Vega, 801 F.3d at 80.  The same standards are used to analyze all three claims.  See Gonzalez v. City of New York, 845 F. App'x 11, 13-14 (2d Cir. 2021) (summary order) ("A district court's evaluation of a retaliation claim based on a violation of the Fourteenth Amendment under Section 1983 mirrors the analysis of such a claim under Title VII.");  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (retaliation claims under the ADEA are analyzed under the same standards as claims under Title VII);  Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006) ("The ADEA contains a nearly identical provision [to Title VII] prohibiting retaliation for complaining of employment discrimination on the basis of age, see 29 U.S.C. § 623(d), and the same standards and burdens apply to claims under both statutes.").

To establish a retaliation claim under each of these statutes, a plaintiff must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Littlejohn, 795 F.3d at 316 (internal quotation marks & citation omitted).  A plaintiff must also prove "that the desire to retaliate was the but-for cause of the challenged employment action."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013); see id. at 360 (Title VII claim requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer");  Lively, 6 F.4th at 302-04 (under the ADEA, plausible allegations of a "but-for causal relationship [are] required to state a claim.");  Gonzalez, 845 F. App'x at 14 (§ 1983

17

retaliation claim requires proof "that the adverse action would not have taken place 'but-for' the retaliatory motive").

## III.  ANALYSIS

### A.  Plaintiff's Motion Lacks Bad Faith, Undue Delay Or Undue Prejudice

As a preliminary matter, Plaintiff's motion lacks bad faith, undue delay or undue prejudice.  See Fed. R. Civ. P. 15(a).  Under the circumstances presented here, the Court finds that Plaintiff has not demonstrated a bad-faith desire to delay or prejudice the proceedings. Further, the Court disagrees with Defendants that Plaintiff's PSAC is a "complete rewrite" of the action, particularly to the extent it seeks to add claims that did not exist at the time the case was commenced.  The delay between the new conduct and the motion to amend is not inordinate, the last allegedly retaliatory act having occurred a few months before the filing of the motion.  See McCulloch v. Town of Milan, No. 07 Civ. 9780 (LAP) (RLE), 2009 WL 3326638, at *2 (S.D.N.Y. Oct. 15, 2009) (finding inordinate delay where motion was filed twenty-two months after the event giving rise to the retaliation claim).  Further, Plaintiff had fundamental disagreements with her prior counsel as to claims raised and omitted.  In the interest of fairness, Plaintiff should be permitted to revise and add to her claims with the assistance of her new counsel.

As to whether amendment will cause undue prejudice, "courts 'generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  Pettiford v. City of Yonkers, No. 14 Civ. 6271 (JCM), 2021 WL 2556172, at *2 (S.D.N.Y. June 21, 2021) (quoting Monahan v. New York City Dep't of Corr., 214 F.3d 275,

284 (2d Cir. 2000) (internal quotation marks & citation omitted)).  Defendants have generally

argued that "extensive" discovery will be necessary.  This argument that the litigation would

have to "start over" lacks merit.  Defs.' Opp. at 8.  Any concerns regarding the extent of

additional discovery and any resulting delay can be raised and addressed before the undersigned

when or if a supplemental discovery schedule is implemented.  See Duling v. Gristede's

Operating Corp., 265 F.R.D. 91, 100-01 (S.D.N.Y. 2010) ("the need for new discovery is not

sufficient to constitute undue prejudice on its own" since "[t]he prejudice that would flow from

any additional required discovery can generally be mitigated by adjustments to the discovery

schedule").  Given likely COVID-related delays in the Court's trial scheduling, it is unlikely that

any trial in this case would be held before late 2022 at the earliest.  That leaves sufficient time to

conduct discovery and complete motion practice.

The Court concludes that Plaintiff's motion to amend is not barred by bad faith, undue

delay or undue prejudice.  Defendants' arguments that Plaintiff's motion to amend should be

denied because the proposed amendments would be futile will be addressed below.

**B. 2017 Position -- ADEA Claim**

In addition to her previously pleaded claim of race discrimination arising from

Defendants' failure to promote her to the 2017 Position, Plaintiff proposes to add a separate

cause of action for age discrimination under the ADEA.  Plaintiff alleged in her charge filed with

the DHR that she had suffered age discrimination when she was not promoted in 2017, and the

agency's decision of January 9, 2018, reflects that such a claim was presented.  See DHR

Decision.  She did not, however, include this claim in either her original or first amended

complaint.  As such, Defendants argue that any age-discrimination claim related to her

application for the 2017 Position is now time-barred because Plaintiff failed to present such a

19

claim within 90 days of her receipt of a right-to-sue letter from the EEOC.  See Defs.' Opp. at 12; Frederick v. JetBlue Airways Corp., 671 F. App'x 831, 832 (2d Cir. 2016) (summary order) (Title VII and ADEA claims untimely where the complaint was filed more than 90 days following the EEOC's notice).  Plaintiff does not disagree that she did not include this claim in her complaint, but she asks the Court to find that the 90-day rule was equitably tolled because of her first attorney's alleged error.

The Second Circuit has held that a plaintiff may bring claims even after the 90-day period has elapsed if she "'(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that' extraordinary circumstances kept her from filing on time." Perez v. Mason Tenders Dist. Council Tr. Funds, 742 F. App'x 584, 585 (2d Cir. 2018) (summary order) (quoting Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003), as amended (July 29, 2003)).  The requirements of reasonable diligence and extraordinary circumstances are distinct elements, both of which must be satisfied.  See Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 257 (2016).  Plaintiff claims that she acted with reasonable diligence by including the age-discrimination claim in her DHR Complaint and by asking her prior counsel to include the claim in the complaint here.  Pl.'s Reply at 4-5.

For the reasons explained below, this Court respectfully recommends that application of equitable tolling is not warranted as Plaintiff has not demonstrated either extraordinary circumstances or reasonable diligence necessary for such a finding.  As such, the request for leave to add an ADEA claim as to the 2017 Position should be denied as untimely.

The "extraordinary circumstances" under which equitable tolling applies are "rare and exceptional."  Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005).  In this case, Plaintiff

20

argues that her prior attorney's misconduct in failing to include the age-discrimination claim in her complaint meets the extraordinary circumstances standard. Attorney conduct may meet the extraordinary circumstances threshold if it is "more significant than 'garden variety. . . neglect.'" Perez, 742 F. App'x at 585 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Although "attorney error normally will not constitute the extraordinary circumstances" to trigger the use of the equitable tolling doctrine, "an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) (emphasis in original). An attorney's bad advice to his client, "ordinary mistakes, or miscalculations of a filing deadline, generally do not rise to the level of an 'extraordinary circumstance' warranting tolling of a filing deadline." Fromwiller v. Comm'r of Soc. Sec., No. 19 Civ. 964, 2020 WL 2768815, at *3 (W.D.N.Y. May 28, 2020) (collecting cases). On the other hand, an attorney's failure to follow a client's express instruction to file an action may constitute an extraordinary circumstance. See Dillon v. Conway, 642 F.3d 358, 363-64 (2d Cir. 2011) (equitable tolling available where counsel affirmatively assured plaintiff that petition would be filed prior to the filing date, plaintiff relied on those assurances, and counsel breached that promise); Baldayaque, 338 F.3d at 152 (where counsel was given specific direction by client's representatives to file a habeas petition, counsel, "[b]y refusing to do what was requested by his client on such a fundamental matter . . . violated a basic duty of an attorney to his client"); Zapata v. Colvin, No. 13 Civ. 1875 (JAM), 2016 WL 777893, at *3 (D. Conn. Feb. 29, 2016) (finding "extraordinary circumstances" where an attorney lied about having filed an action in federal court for over a year and was found out through independent inquiry by plaintiff's alternate counsel).

21

Plaintiff states that she "wished to pursue the age discrimination claim, but for reasons unknown to me, the [prior counsel] did not include this as part of my Complaint."  Pl.'s Decl. ¶ 6.  She states that she "believe[s] the reason for this was the high turnover" of attorneys, noting that three attorneys who handled her case left the firm.  Id.  She does not state, however, that she expressly instructed anyone at the prior firm to include an age-discrimination claim in her complaint, nor does she suggest that anyone at the prior firm made any assurance to her that such a claim would be added.  As such, counsel's error, if indeed it was an error and not a strategic decision by counsel, did not rise to the level of egregious misconduct supporting the finding of an extraordinary circumstance.

Extraordinary circumstances may also be found where a plaintiff is "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  Irwin, 498 U.S. at 96. Plaintiff points out that during the administrative process, the "LIRR claimed falsely that there was little age difference between me and the person selected.  In fact there was about a ten-year difference between our ages," Pl.'s Decl. ¶ 5; she suggests that prior counsel did not include an age-discrimination claim because "it appears that he relied upon Defendants' false assertion as to age."  Pl.'s Reply at 5.  To the extent Plaintiff suggests misconduct on the part of the LIRR in misrepresenting the age of the applicant who was given the position in question, she does not argue that the statement was made to prevent her from filing her court action, and she provides only conjecture that her prior counsel's reliance on this misinformation led to the decision to omit the age-discrimination cause of action from the complaint.  See Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) ("[P]etitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the

lateness of the filing" (internal quotation marks & citation omitted)).  These events do not amount to extraordinary circumstances.

Even assuming <u>arguendo</u> that the conduct of Plaintiff's former counsel was sufficiently egregious to warrant equitable tolling, Plaintiff failed to demonstrate the exercise of reasonable diligence on her part.  "Reasonable diligence means that the petitioner acted as diligently as reasonably could have been expected under the circumstances."  <u>Salaam v. New York State Supreme Ct.</u>, No. 19 Civ. 2293 (MKB), 2019 WL 5788480, at *3 (E.D.N.Y. Nov. 6, 2019) (citation, alterations & internal quotation marks omitted).  Plaintiff's active involvement in her case indicates that she had the opportunity to insist upon the inclusion of the age-discrimination claim.  For example, she testified that she helped draft her complaint and reviewed it.  <u>See</u> Deposition of Ms. Martinez, ECF No. 75-3 at 23:3-5, 24:16-18.  Plaintiff does not offer specific facts regarding the timing or scope of her instruction to prior counsel as to the claim, stating by declaration only that she "wished to pursue the age discrimination claim" and that she believed the omission was due to "high turnover of counsel at the Borelli Law Firm." Pl.'s Decl. ¶ 6.

Plaintiff has not provided an explanation for her lack of diligence after she learned that an age-discrimination claim had not been alleged on her behalf, or after prior counsel was given leave to withdraw.  "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000); <u>see</u> <u>Lawrence v. Greene</u>, No. 06 Civ. 202 (DLI), 2011 WL 1327128, at *5 (E.D.N.Y. Mar. 31, 2011) ("even if the court were to find that counsel's conduct initially

constituted extraordinary circumstances, Petitioner's failure to subsequently file the petition after realizing counsel's assistance was insufficient, especially where Petitioner here had almost a year to do so, shows Petitioner was not reasonably diligent and breaks any causal link between the alleged extraordinary circumstances and the failure to file").

In the period of time after counsel's withdrawal during which Plaintiff appeared pro se, she did not request permission to add the discrimination claim. She does not suggest there was any impediment that prevented her from presenting the Court with this information; indeed, Plaintiff was capable of communicating directly with the Court as she did in response to the motion by her initial counsel to withdraw and when she represented herself pro se on occasions prior to the appearance by her current counsel. See Dkt. Entries 1/30/2020, 4/3/2020. The record does not indicate when, or if, Plaintiff told her new attorneys about the omitted age-discrimination claim. Her current counsel, who appeared in the case on June 16, 2020, did not attempt to add this claim until the filing of the instant motion on November 6, 2020, over four months later. Counsel did not indicate that such a claim was forthcoming during a proceeding in July 2020 before this Court, see Transcript of 7/7/2020 conference, ECF No. 56, nor did the pre-motion conference letter authored by him and dated October 16, 2020, seek leave to amend to add an age-discrimination claim related to the 2017 Position. See ECF No. 57. In these circumstances, Plaintiff had several opportunities to attempt a remedy but did not do so. As Plaintiff was not reasonably diligent, any causal link between the purported extraordinary circumstances of prior counsel's conduct and the failure to file the claim was broken.

As neither the extraordinary-circumstances nor the reasonable-diligence element is satisfied, the Court respectfully recommends that the District Court deny the motion to equitably toll the 90-day filing deadline for an age-discrimination claim arising from the failure-to-promote

claim for the 2017 Position.[5]  As such, the motion to add an age-discrimination claim as to the 2017 Position should be denied.

### C.  PSAC Fails To Plead A § 1983 Claim

#### 1.  Section 1983 Claim Against The LIRR Or The MTA

Plaintiff asserts multiple statutory bases, including § 1983, for her proposed claims for retaliation (Count III) and retaliatory hostile work environment (Count IV).  She also suggests that she may be asserting a § 1983 claim of discrimination as to the 2020 MTA Position (Count V).  To the extent the PSAC intends to raise any § 1983 claims, her proposed pleading fails.

The PSAC does not mention Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), or suggest a theory of liability under that case upon which she seeks to rely.  Regarding her proposed cause of action for discrimination in the failure to hire her for the 2020 MTA Position, Plaintiff does not refer to § 1983 in the heading for proposed Count V, nor does she cite Monell

---

[5] Were the District Court to find that the Plaintiff's age-discrimination claim regarding the 2017 Position is not time-barred, this Court would respectfully recommend that Plaintiff be permitted to add this claim against the LIRR.  The PSAC alleges a prima facie claim by alleging that Plaintiff was over 40 years of age, that she was qualified for the job, that she was more qualified than the candidate who was awarded the position, that Defendants failed to promote her, see Mills v. S. Connecticut State Univ., 519 F. App'x 73, 75 (2d Cir. 2013) (summary order) ("failure to promote [plaintiff] constitutes an adverse employment action"), and that circumstances give rise to an inference of discrimination including the significant age difference between Plaintiff and the successful candidate, and the allegedly ageist remarks made by Ms. Meilick, a decisionmaker, see Testa v. Carefusion, No. 14 Civ. 5202 (JFB), 2016 WL 4099113, at *5 (E.D.N.Y. Aug. 2, 2016) (noting that ageist verbal comments "may constitute evidence of discrimination").  The reasons given for hiring the successful applicant – that she was "new" and was "going to bring fresh ideas and new ways" to performing the job, see PSAC ¶ 53, plausibly allege that Plaintiff's age may have been a but-for factor in Defendants' decision.  As Plaintiff's administrative complaint included an allegation of age discrimination with respect to the 2017 denial of promotion that was addressed in the DHR Decision, and Plaintiff was issued a right-to-sue letter based on that complaint on February 23, 2018, Plaintiff has adequately exhausted the administrative requirements as to the claim.

in the PSAC or in her legal memoranda.  Plaintiff does, however, allege that "the MTA and the LIRR are state actors, which, while acting pursuant to a policy or custom, discriminated against the Plaintiff on the basis of her race, in violation of the Equal Protection Clause."  PSAC ¶ 97. Based on this language and other factual allegations, the Court suspects that Plaintiff had intended to assert a cause of action under Monell.

In an introductory paragraph in the "Parties" section of the pleading, she alleges that the MTA and the LIRR "are also persons within the meaning of § 1983, while Defendant Meilick acted under color of law pursuant to § 1983," and Paul Fama "acted on behalf of both entities under color of law pursuant to § 1983."  Id. ¶ 18.  As to the retaliatory failure to promote her to the 2020 MTA Position, Plaintiff alleges that Mr. Fama was "acting under color of law and by way of authority and power granted to him by the LIRR."  Id. ¶ 88.

The PSAC also includes several conclusory paragraphs that may be intended to allege the existence of a custom or policy.  For example, the PSAC includes generalized allegations of the LIRR's "history of systemic discrimination" and references settlement decrees in a matter, Capers v. Long Island Railroad, which purportedly required the LIRR to take various actions "to combat the effects of past discrimination."  PSAC ¶ 19.  She alleges that the LIRR did not follow a practice of hiring from within despite that issue having been "addressed" by the Capers settlement. [6]  Id. ¶¶ 26-27; see id. ¶ 20 ("[e]ventually," at some unspecified time, the position of Diversity Manager was created by the MTA and the LIRR as "an entirely symbolic gesture on

_____

[6] Although she does not offer an indication when these events occurred or the type of discrimination that was at issue in the Capers litigation, the Court's research reveals a federal case with this name, No. 72 Civ. 3168, commenced in 1972 by African-American employees of the LIRR alleging racial discrimination in employment decisions.  Although four decisions can be found on Westlaw for this case, none addresses the scope or terms of the purported settlement decrees.

the part of the railroad, to create the appearance that the LIRR had reversed course with respect to discrimination").

Plaintiff offers testimony of two fellow employees regarding discrimination at the LIRR. She cites testimony from Kelly Valentin, identified as the former EEO Officer and Diversity Manager at the LIRR, that the LIRR "had a lot of patterns of discrimination," without further elucidation.  Id. ¶ 20 (quoting Deposition of Kelly Valentin, ECF No. 61-1).  Ms. Valentin left that position in March 2012.  Deposition of Kelly Valentin, ECF No. 75-5.  In another conclusory allegation, Plaintiff states that "evidence in the case abounds that African-Americans are not fairly promoted into senior management at LIRR."  PSAC ¶ 31.  In support, she offers deposition testimony from Willie Jenkins, an African-American co-worker "who should have been in the position now held by his white supervisor, Mary Lou Centauro."  Id.  According to his testimony, from 2012 through the date of the deposition in May 2019, three individuals applied for promotions and were denied – Ms. Martinez on three occasions, Mr. Jenkins on one occasion, and Ivan Bin on two or three occasions.  Id.  Mr. Bin's race is not in the record.  Thus, Plaintiff offers only the experience of herself and one other non-Caucasian employee, but no comparative information about who received promotions within this time frame.[7]

Any attempt to impose liability under § 1983 on the LIRR or, if added as a defendant, the MTA, can only be accomplished via a claim under Monell.  "To plead a Monell claim, a plaintiff

---

[7] Plaintiff alleges that in some instances, unqualified candidates are hired and given a "waiver" regarding degree requirements and cites as an example "the last chance waiver, freely given to white employees – not so for people of color."  PSAC ¶ 28.  She also cites the existence of "anecdotal evidence that nepotism runs rampant throughout Defendants' workplace" with the result of "destroy[ing] the notion of equality, which affirmative action strived to achieve."  Id. ¶ 29.

must allege the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 13 (2d Cir. 2015); see Stampf v. Long Island R.R. Auth., No. 07 Civ. 3349 (SMG), 2010 WL 2517700, at *8 (E.D.N.Y. June 14, 2010) (claims against the MTA and the LIRR fail "because a plaintiff seeking to impose Section 1983 liability against an entity must establish that the entity had an official custom or policy that deprived plaintiff of her constitutional rights"). "Municipal liability under § 1983 can only be predicated on individual wrongdoing that is carried out in accordance with a municipal policy, custom or practice." Lee v. City of Syracuse, 446 F. App'x 318, 322 (2d Cir. 2011) (emphasis in original).

The PSAC expressly indicates that her claims for retaliation and retaliatory hostile work environment are brought pursuant to, inter alia, § 1983. She again fails to mention Monell, either in the PSAC or in her legal submissions, and fails to allege facts necessary to state these claims.

## 2. Section 1983 Claim Against Ms. Meilick

To the extent Plaintiff is seeking to impose individual liability on Ms. Meilick, the former supervisor retired in 2017, shortly after Plaintiff did not receive the promotion to the 2017 Position and before Plaintiff filed her DHR Complaint. The PSAC does not include factual allegations of conduct by Ms. Meilick subsequent to her retirement, and any allegations regarding her pre-retirement conduct took place prior to Plaintiff's protected activity;[8] thus, it

---

[8] As will be discussed below, the protected activity of Plaintiff which led to the alleged retaliation was the filing of the DHR Complaint on May 10, 2017. See Section III.D.1.a, infra.

cannot constitute a retaliatory adverse action.  Although the PSAC identifies other actors involved in the alleged retaliation, none is named as a defendant nor is any alleged to be an official with final policymaking authority.  Although the PSAC contains allegations that suggest a past history of racial discrimination by the LIRR, there are no allegations regarding the existence of a custom and practice of retaliating against employees who complained about race discrimination.  Further, Plaintiff has not alleged any policy that promoted or condoned harassment in retaliation for protected activity what would support a retaliatory hostile work environment claim under § 1983 as against the LIRR.

The Court declines to further analyze and determine whether the allegations in the PSAC support any Monell claim, largely because she has not stated that she is asserting such a cause of action.  Simply put, "[i]t is not the Court's duty to make an educated guess as to the claim being asserted."  Laface v. E. Suffolk BOCES, No. 18 Civ. 01314 (ADS), 2019 WL 1959489, at *4 (E.D.N.Y. May 2, 2019).  Moreover, the lack of clarity in the proposed pleading not only affects the Court's ability to assess whether a Monell claim is adequately pled, but may have had a similar effect on Defendants.  Plaintiff does not mention, or argue in support, of such a claim in her motion, and thus, unsurprisingly, Defendants do not address any potential Monell claim.  A complaint must afford the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Here, Plaintiff has failed to provide the requisite fair notice to Defendants.  See Antrobus v. City of New York, Dep't of Sanitation, No. 11 Civ. 5434 (CBA) (LB), 2012 WL 6675387, at *2 (E.D.N.Y. Aug. 15, 2012) (recommending dismissal since "[a]s the defendant and the Court can only guess what claims plaintiff is making and what facts support plaintiff's claims, the complaint fails to satisfy Rule 8), report & recommendation

adopted, 2012 WL 6675168 (E.D.N.Y. Dec. 20, 2012).  Therefore, to the extent the PSAC seeks to assert a claim or claims under Monell against the LIRR and/or the MTA, it is respectfully recommended that the motion be denied with leave to move to amend as appropriate.

### D.  Retaliation Claims

Plaintiff seeks to add a claim of retaliation under Title VII and the ADEA,[9] see PSAC ¶¶ 73-91, and a separate claim for retaliatory hostile work environment, see id. ¶¶ 92-95. "Discrete acts constituting discrimination or retaliation claims must be kept conceptually distinct from hostile work environment claims, which must be based on severe and pervasive discriminatory intimidation or insult."  Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 293 (E.D.N.Y. 2005) (internal quotation marks & citation omitted).  The Supreme Court, in writing that "[h]ostile environment claims are different in kind from discrete acts," has explained that "[t]heir very nature involved repeated conduct."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  A plaintiff may not "piggyback the discrete adverse acts about which he complains onto hostile work environment in order to make them actionable." Magadia v. Napolitano, No. 06 Civ. 14386 (CM), 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009); see generally Duplan v. City of New York, 888 F.3d 612, 621, 627 (2d Cir. 2018) (separately addressing plaintiff's Title VII claim based on "discrete instances of retaliation he suffered" and claim "that he was subjected to a generally hostile work environment in retaliation" for making complaints).  With this distinction in mind, the Court considers the two retaliation claims proposed by Plaintiff.

--------------------------------------

[9]Although the heading for proposed Count III states that it is arises under only Title VII and § 1983, the PSAC Count III subsequently alleges that one act, the failure to select her for the 2020 MTA Position, "was retaliatory and was in violation of Title VII, § 1983 and the ADEA." PSAC ¶ 89.

Plaintiff identifies the following acts of retaliation occurring after she filed her complaint with the DHR:  (1) Defendants attempted to alienate Plaintiff by excluding her from certain job functions, bypassing her, and working directly with her subordinates, PSAC ¶ 74; (2) during a meeting with Plaintiff and others, LIRR attorney Veytsman inappropriately attempted to cast doubt upon her claims, suggesting they lacked merit because the "N" word was not used in connection with her case, id. ¶ 76; (3) Mr. Veytsman made comments regarding the merit of her lawsuit within earshot of colleagues, "with the clear intent of making her feel unwelcome at her workplace," id. ¶¶ 77-78, and emailed her department, describing how Plaintiff was making "an attempt to reboot her federal complaint yet again," stating that she provided "precious few details," and requesting that her colleagues provide further information, id. ¶ 85; (4) Defendants purposefully withheld positive feedback regarding Plaintiff's job performance, thus preventing her from using such feedback in connection with promotion applications, id. ¶¶ 79-81; (5) Plaintiff's mail was repeatedly opened contrary to departmental procedure, id. ¶ 82; (6) Plaintiff's supervisor ignored her emails, id. ¶ 83; (7) at a departmental meeting on July 17, 2020, Plaintiff's supervisor stated "there are no promotions and there is no money for anyone," a comment that was clearly "directed at the Plaintiff" and was made to "further harass the Plaintiff and to chill her out of continuing of her civil rights claims against the LIRR," id. ¶ 84; and (8) the denial of her application for the 2020 MTA Position, id. ¶ 87.

### 1.  Retaliation

Retaliation claims under Title VII and the ADEA require plausible allegations that a plaintiff participated in a protected activity, that a defendant knew about that protected activity, that a plaintiff suffered and adverse employment action, and that there was a causal connection

between the protected activity and the adverse employment action.  See Littlejohn, 795 F.3d at 316.

### a.    Protected Activity & Defendants' Knowledge Thereof

As to the first element, an employee engages in protected activity when she "complain[s] or is critical about the discriminatory employment practices of her employer."  Littlejohn, 795 F.3d at 318 (internal quotation marks & citation omitted; alteration in original).  Complaints to human resources and EEOC charges meet the criteria of protected activities, see Rivera v. JP Morgan Chase, 815 F. App'x 603, 607 (2d Cir. 2020) (summary order), as does the commencement and maintenance of the instant litigation, which may be considered to be an ongoing protected activity.  See, e.g., Cruz v. Lee, No. 14 Civ. 4870 (NSR), 2016 WL 1060330, at *6 (S.D.N.Y. 2016) ("filing and prosecuting a federal lawsuit is a constitutionally protected activity"); Singleton v. Mukasey, No. 06 Civ. 6588 (GEL), 2008 WL 2512474, at *6 (S.D.N.Y. June 13, 2008) (where plaintiff was engaged in ongoing litigation at the time the failure to promote occurred, that act "necessarily followed closely on protected activity by [plaintiff]. Thus, a reasonable jury could conclude that the adverse decisions were retaliation for [plaintiff]'s ongoing lawsuit."), aff'd sub nom. Singleton v. Holder, 363 F. App'x 87 (2d Cir. 2010).

Plaintiff's filing of the formal DHR complaint on May 10, 2017, clearly satisfies the requirement of protected activity, as does Plaintiff's pursuit of her remedies in this litigation.

Plaintiff also claims that she participated in protected activity at some other unspecified time when she "voiced her opposition to the discriminatory practices of Ms. Meilick and the LIRR."  Pl.'s Mem. at 8.  The two paragraphs from the proposed second amended complaint she cites do not support the contention made in her brief.  In one paragraph, she alleges that she "raised concerns that the refusal to promote her was unfair, and therefore, discriminatory."

PSAC ¶ 30.  She does not provide factual allegations as to when, where or to whom these concerns were addressed.  In addition to being conclusory, this statement does not necessarily constitute a complaint of discrimination as a process may be unfair without running afoul of laws prohibiting discrimination.  Plaintiff also cites testimony from Michael Fyfe, identifying him as one of "Defendants' Managers," but not alleging that he was her supervisor or that she made a complaint of discrimination to him.  The second allegation cited by Plaintiff states only that at some unspecified time, she "<u>inquired</u> as to why Ms. Wallace was hired over her" for the 2017 Position, not that Plaintiff made complaints of discrimination regarding that decision.  <u>Id.</u> ¶ 53 (emphasis supplied).  These two allegations are insufficient to constitute a plausible claim of protected activity via an internal complaint.  In the absence of any non-conclusory allegations of earlier complaints, the filing of the 2017 DHR complaint remains the earliest protected activity.

### b.  Adverse Employment Action

Defendants' opposition focuses on whether Plaintiff plausibly alleged an adverse employment action sufficient to sustain a retaliation claim.  <u>See</u> Defs.' Opp. at 14-16.  To avoid dismissal under Rule 12(b), "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and 'we have repeatedly cautioned against setting the bar too high' in this context."  <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007) (quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003) (emphasis omitted)).  In assessing a retaliation claim, "an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination."  <u>Vega</u>, 801 F.3d at 90 (internal quotation marks omitted); <u>see</u> <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 57 (2006) (materially adverse actions "must be harmful to the point that they could well

33

dissuade a reasonable worker from making or supporting a charge of discrimination"). This standard reflects the principle that the anti-retaliation protections are broader than the anti-discrimination provisions. See Hicks, 593 F.3d at 165 (noting that earlier decisions in this Circuit limiting Title VII "unlawful retaliation to actions that affect the terms and conditions of employment . . . no longer represent the state of the law" (citations omitted)); Witkowich v. U.S. Marshals Serv., 424 F. App'x 20, 22 (2d Cir. 2011) (noting that to constitute an adverse action under the ADEA, the act must "have dissuaded a reasonable employee in his position from complaining of unlawful discrimination" (internal quotation marks & citation omitted)).

In examining the conduct and determining whether it "amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." Hicks, 593 F.3d at 165 (internal quotation marks & citation omitted); see Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) (Second Circuit precedent "allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass"). It is well-established that "an adverse action could qualify as retaliatory only if it 'follow[s] in time,' not precedes, the protected activity." Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist., 808 F. App'x 19, 21 (2d Cir. 2020) (summary order) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation marks omitted)). Only adverse actions that occurred after the filing of the DHR Complaint on May 10, 2017, are considered for the purpose of the retaliation claims.

Plaintiff argues that the adverse-employment-action element is satisfied by her allegations regarding Defendants' acts in withholding from her positive feedback about her work "which is an essential element in applications for promotion." Pl.'s Mem. at 9. She further

claims that Defendants acted to exclude her from certain functions of her job, PSAC ¶ 74, bypassed her to work directly with her subordinates, id., and unreasonably interfered with her performance at work.  See Patane, 508 F.3d at 116 (reversing dismissal of retaliation claim noting that "significantly diminished material responsibilities as the sort of employment action sufficiently disadvantageous to constitute an adverse employment action in a Title VII case" (internal quotation marks & citation omitted)).  The withholding of positive feedback regarding her job performance prevented her from using such feedback in connection with promotion applications, thus affecting her opportunities for advancement.  PSAC ¶¶ 79-81.  It is plausible that a reasonable worker in Plaintiff's position would decline to report discriminatory acts in order to maintain her current position and responsibilities and to preserve the possibility of future promotions.

The lone act identified by Plaintiff as violative of the ADEA's retaliation prohibition is the denial of her application for the 2020 MTA Position.  Although the opening was for a position with the MTA and not the LIRR, Plaintiff alleges that she was interviewed by Mr. Fama, who held the same position at both entities, and thus "the LIRR was aware of Plaintiff's application" for the MTA Position," id. ¶ 60, and that the denial of her application "was in retaliation for her pursuit of her discrimination claims at the LIRR," id. ¶ 61.  She further claims that a few days after she submitted her application, her supervisor made an unsolicited, out-of-context statement during a departmental meeting declaring that no promotions were forthcoming. Id. ¶ 84.  Denying or preventing a promotion is undoubtedly an actionable adverse employment action.  See Levitant v. City of New York Hum. Res. Admin., 558 F. App'x 26, 29 (2d Cir. 2014) (summary order) ("It is well-established that a failure to promote is an adverse employment action.")

### c. Causal Connection

The causal-connection requirement is met if a plaintiff "plausibly allege[s] that the retaliation was a 'but-for' cause of the employer's adverse action." Vega, 801 F.3d at 90.  "At the pleadings stage, causation may be satisfied by allegations that 'each of the adverse actions' defendants took 'occurred against a backdrop of continuing antagonism and frustration of [the plaintiff's] professional ambitions.'" Collymore v. City of New York, 767 F. App'x 42, 46 (2d Cir. 2019) (summary order) (quoting Duplan, 888 F.3d at 626).  Acts taken that affected Plaintiff's future attempts at advancement plausibly suggest but-for causation in light of her complaints of discrimination in failing to promote her.[10]

In addition, the conduct of the LIRR attorney was allegedly taken in direct response to this pending litigation.  See Ahmad v. White Plains City Sch. Dist., No. 18 Civ. 3416 (KMK), 2020 WL 5720753, at *11 (S.D.N.Y. Sept. 24, 2020) ("Where, as here, the alleged adverse action occurred in response to ongoing litigation, there is adequate temporal proximity to find causation.") (citing Lewis v. Hanson, No. 9:18 Civ. 12 (LEK) (DJS), 2020 WL 1812556, at *13

---

[10] Some of the allegations regarding comments and conduct viewed in isolation may amount to nonactionable "petty slights, minor annoyances, and simple lack of good manners."  White, 548 U.S. at 68 ("[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable") (internal quotation marks & citation omitted); see Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 571 (2d Cir. 2011) (finding that comment by supervisor about people he did not like, followed by pointed stare at plaintiff during an employee meeting, was not a material adverse action); Santiesteban v. Nestle Waters N. Am., Inc., 61 F. Supp. 3d 221, 242 (E.D.N.Y. 2014) (plaintiff's claim that after he made a complaint, his manager "ignored him completely" did not rise to the level of an adverse employment action); Rivera v. Orange Cnty., No. 10 Civ. 9134 (VB), 2013 WL 812016, at *9 (S.D.N.Y. Mar. 5, 2013) (defendants' alleged acts of closely supervising plaintiff, excluding him from meetings, assigning him more menial tasks, and "generally making him feel isolated at work" do not qualify as adverse employment actions, but rather were among "'those petty slights or minor annoyances that often take place at work and that all employees experience'") (quoting White, 548 U.S. at 68)).  Viewed cumulatively with the other conduct, however, the incidents support Plaintiff's retaliation claim.

(N.D.N.Y. Apr. 9, 2020))); <u>Cruz</u>, 2016 WL 1060330, at *7 (noting close temporal proximity where case was pending "and the protected activity was therefore ongoing" and finding causal connection).  As Defendants' acts took place while Plaintiff pursued her remedies in this Court, she has "sufficiently alleged a causal connection between her protected activity and the retaliatory acts."  <u>Collymore</u>, 767 F. App'x at 47.

Based on these allegations, Plaintiff plausibly states a claim of retaliation under the ADEA and Title VII.  It is respectfully recommended that Plaintiff's motion to add a retaliation claim be granted.

### 2.    Retaliatory Hostile Work Environment

Plaintiff's proposed Count IV is entitled "Hostile Work Environment" and alleges an environment that she "has had to endure every single day simply because she exercised a constitutionally protected right to protest these public and publicly-trusted companies' raw acts of discrimination."  PSAC ¶ 93.  As the proposed pleading is tied to her right to complain of discrimination, it asserts a claim for retaliatory hostile work environment.  She does not indicate the statutory basis for her claim in its heading, but she subsequently alleges that her suffering is "a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of § 1983."  <u>Id.</u> ¶ 94.[11]

Even assuming that Plaintiff intended to assert the claim under Title VII, Plaintiff does not plead a viable claim under that statute.  In the context of a claim for retaliatory hostile work environment, "a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct."  <u>Johnson v. City of New</u>

---

[11] As discussed above, <u>see</u> Section III.C, <u>supra</u>, the PSAC fails to state a claim under § 1983.

York, No. 16 Civ. 6426 (KAM) (VMS), 2018 WL 1597393, at *15 (E.D.N.Y. Mar. 31, 2018)

(internal quotation marks & citation omitted).[12]  A Title VII claim for hostile work environment

requires evidence that "the workplace is permeated with discriminatory intimidation, ridicule,

and insult that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment."  Littlejohn, 795 F.3d at 320-21

(quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "Isolated incidents generally will

---

[12] Subsequent to the Supreme Court's decision in White regarding the standard for evaluating retaliation claims, courts in this Circuit identified an "open question" as to whether a different standard should also be used for a retaliatory hostile work environment claim as opposed to a discriminatory hostile work environment claim, "namely, whether to succeed on a retaliatory hostile work environment claim, the employee must demonstrate that the hostile conduct would dissuade a reasonable worker from engaging in protected activity, rather than that the hostile conduct altered the terms and conditions of employment."  Spaulding v. New York City Dep't of Educ., No. 12 Civ. 3041 (KAM) (VMS), 2015 WL 12645530, at *58 (E.D.N.Y. Feb. 19, 2015), report & recommendation adopted, 2015 WL 5560286 (E.D.N.Y. Sept. 21, 2015).  Although not expressly addressing the issue, the Second Circuit, in affirming the dismissal on summary judgment of a retaliatory hostile work environment claim, confirmed that a plaintiff must show that the "harassment was sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment."  Pistello, 808 F. App'x at 24 (quoting Fox v. Costco Warehouse Corp., 918 F.3d 65, 74 (2d Cir. 2019), and noting that while the claim was made under the Americans with Disabilities Act ("ADA"), hostile work environment claims under the ADA and Title VII are evaluated under the same standard); see Olsen v. Suffolk Cnty., No. 15 Civ. 4064 (JS) (AYS), 2016 WL 5395846, at *14 n.8 (E.D.N.Y. Sept. 27, 2016) (noting that "nearly every decision to address a claim for retaliatory hostile work environment has held that a plaintiff must satisfy the same standard used to evaluate conventional hostile work environment claims" (internal quotation marks & citation omitted)); Cajamarca v. Regal Entm't Grp., 863 F. Supp. 2d 237, 254 (E.D.N.Y. 2012) (declining to apply a different standard to retaliatory hostile work environment claims because "the Supreme Court provided no indication in White that it intended to expand the reach of the judicially-created claim of retaliatory hostile work environment in addition to lowering the burden of making out a claim based on the retaliatory acts of an employer"); Drees v. Cnty. of Suffolk, No. 06 Civ. 3298 (JFB) (ETB), 2009 WL 875530, at *9 n.5 (E.D.N.Y. Mar. 30, 2009) (acknowledging the open question, but applying to a retaliatory hostile work environment claim "the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct").  The Court examines the PSAC to determine whether Plaintiff has plausibly alleged conduct that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

not suffice to establish a hostile work environment unless they are extraordinarily severe." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010). Instead, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014) (internal quotation marks & citation omitted). "Conduct that is merely offensive and not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997) (internal quotation marks & citation omitted); see Cano v. SEIU Loc. 32BJ, No. 19 Civ. 8810 (PAE) (KHP), 2021 WL 4927166, at *5 (S.D.N.Y. June 15, 2021) ("Petty slights and isolated incidents generally do not rise to the level of illegal harassment under federal law."), report & recommendation adopted, 2021 WL 4480274 (S.D.N.Y. Sept. 30, 2021).

The hostile-work-environment standard "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Raspardo, 770 F.3d at 114. The objective test dictates that "'a work environment will be considered hostile if a reasonable person would have found it to be so,'" and the subjective test tells us that the environment is hostile "'if the plaintiff subjectively so perceived it.'" Johnson, 2018 WL 1597393, at *15 (quoting Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004)). Assuming for the purposes of this analysis that Plaintiff has adequately pled her subjective perception of hostility, the PSAC fails to allege conduct that meets the objective test.

Over a fourteen-month period from September 2019 to October 2020, Plaintiff alleges the following specific acts[13] by Mr. Veytsman and Ms. Centauro: (1) attorney Veytsman (a) made loud comments about the merits of this litigation, PSAC ¶¶ 76-77; (b) stopped in front of Plaintiff's office and "stared at her, with the clear intent of making her feel unwelcome at her workplace," id. ¶ 78; (c) in a meeting with Plaintiff and others regarding what it takes to win discrimination claims, used the "N" word as an example of actionable conduct,[14] id. ¶¶ 75-76; and (d) sent a department-wide email seeking further factual information regarding Plaintiff's allegations that contained "superfluous" and "derogatory" remarks, id. ¶ 86; and (2) supervisor Centauro (a) withheld positive feedback about Plaintiff on two occasions, id. ¶¶ 79-81; (b) upon hearing Plaintiff's complaints of her mail being opened, ignored Plaintiff, continued to type without making eye contact, and commented that she "wasn't aware that you had more than one issue like this," id. ¶ 82; (c) on some unspecified number of occasions, ignored Plaintiff's emails, unless she "needed assistance" from Plaintiff, id. ¶ 83; and (d) commented at a meeting that "there are no promotions and there is no money for anyone," id. ¶ 84.  Viewed in their totality,

---

[13] Plaintiff makes a few conclusory allegations of conduct by unnamed parties.  For example, she claims that "Defendants" subjected her to retaliation that was "constant" and included "excluding Plaintiff from certain job functions and bypassing Plaintiff and working directly with her subordinates instead of working with her."  PSAC ¶ 74.  As Defendant Meilick was no longer employed at the time of the alleged retaliation, these allegations fail without factual enhancement as to the particulars of this alleged conduct and the effect on her work environment.  Although Plaintiff claims that her mail was "repeatedly opened, contrary to departmental procedure," id. ¶ 82, she does not identify who took this action or how it constituted hostility.

[14] This allegation is also problematic in that it suggests that an in-house attorney, during a meeting with HR staff regarding the state of the law on employment-discrimination claims, cannot explicitly mention examples of actionable conduct without violating those rules.  In this situation, a plaintiff would need some factual allegation that connects the alleged comments to her discrimination or retaliation claim.

these incidents do not rise to the level of pervasive or severe conduct creating an abusive working environment or altering the conditions of Plaintiff's employment.

In addition to the alleged incidents failing to rise to the objective level of severely or pervasively offensive or humiliating, the PSAC does not include any non-conclusory allegations tying the conduct to the alleged retaliation. "Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002). Beyond identifying a few discrete acts, Plaintiff makes conclusory statements that the conduct was intended to harass her. For example, as to Ms. Centauro ignoring her emails, Plaintiff concludes that this conduct was part of Defendants' intent to harass Plaintiff so she would leave her job, PSAC ¶ 83, but she does not allege how this conduct was different from how other employees' emails were handled. She similarly alleges that Ms. Centauro's comment at a meeting that "there are no promotions and there is no money for anyone" was directed at Plaintiff to "further harass the Plaintiff and to chill her out of continuing" this litigation. PSAC ¶ 84. Further factual enhancement would be necessary to support Plaintiff's conclusion regarding the retaliatory intent of Defendants' alleged conduct.

The Court concludes that the PSAC does not plausibly allege a claim for retaliatory hostile work environment under either § 1983 or Title VII. It is respectfully recommended that Plaintiff's motion to amend to add this claim be denied with leave to replead, if appropriate.

### E. 2020 MTA Position -- Failure to Promote

Plaintiff seeks to add a claim alleging discrimination in failing to appoint her to the 2020 MTA Position which she entitles "Race Discrimination – Title VII & ADEA[,] MTA/LIRR's

Denial of Promotion." The § 1983 claim having been addressed, see Section III.C, supra, the Court considers this claim as it may arise under the ADEA or Title VII.

### 1.  Age Discrimination -- ADEA

To adequately allege age discrimination under the ADEA, a plaintiff must allege that she was within the protected age group, that she was qualified for the position, that she experienced an adverse employment action, and that the action occurred under circumstances giving rise to an inference of discrimination. See Bockus, 850 F. App'x at 51. A plaintiff must plausibly allege she would not have been terminated but-for her age. Lively, 6 F.4th at 303. Plaintiff has adequately pled her age, 53 years old at the time of the application, that she was qualified for the job, and that she was not given the position. Thus, the determinative question is whether she has pled "sufficient facts to plausibly support a minimal inference of 'but-for' causality between [her] age" and the adverse action. Marcus v. Leviton Mfg. Co., 661 F. App'x 29, 32 (2d Cir. 2016).

Assuming that Plaintiff's allegations regarding Mr. Fama's dual positions with the MTA and the LIRR are sufficient to allege that Mr. Fama had knowledge of Plaintiff's age, Plaintiff claims only that she believes that the candidate hired for the MTA position "was younger than the Plaintiff." See PSAC ¶¶ 90, 104. Such a conclusory allegation without any specifics as to the age difference between Plaintiff and the candidate chosen or other allegations demonstrating discriminatory motivation are insufficient to plead the fourth prima facie factor for an age-discrimination claim. For example, the size of the discrepancy between the plaintiff and the "younger" candidate may be significant in supporting an inference of discriminatory intent. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 78-79 (2d Cir. 2005) (noting that where the age difference between a 40-year-old replaced by a 39-year-old will not, without more, likely support

an inference of discriminatory intent, "an employer's decision to replace an older worker with a significantly younger one can support an inference of intentional age discrimination even when both persons are ADEA class members").  Without additional facts, even if there was a substantial age difference, there is no basis for an inference of discriminatory intent from the single fact that Plaintiff was the older candidate.  See Marcus, 661 F. App'x at 32-33 (where the age of the new employee was not pled, noting that "[w]ithout more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive"); Iazetti v. Town of Tuxedo, No. 18 Civ. 6200 (NSR), 2020 WL 4340872, at *9 (S.D.N.Y. July 27, 2020) (finding plaintiff failed to establish inference of discrimination where plaintiff "has not provided specific facts about these 'younger employees'").

Plaintiff also fails to plead any facts demonstrating that Mr. Fama possessed a discriminatory animus.  A "cat's paw" theory of liability may be applicable in ADEA claims, whereby the discriminatory animus of one agent of the employer is attached to the act of another agent to impose liability on the employer.  See Dickinson v. City Univ. of New York, No. 16 Civ. 1036 (VSB), 2018 WL 4333986, at *15 n.20 (S.D.N.Y. Sept. 11, 2018).  Plaintiff only alleges that Mr. Fama had knowledge of Plaintiff's experiences at the LIRR.  Plaintiff fails to plead any facts demonstrating why Ms. Meilick's alleged ageism should be connected to Mr. Fama's declining to hire Plaintiff in 2020.

The Court respectfully recommends that Plaintiff's motion to amend her complaint to include an age-discrimination claim for the denial of her application to the 2020 MTA Position be denied with leave to replead if Plaintiff can allege all of the necessary elements.

## 2.  Race Discrimination -- Title VII

As to the 2020 MTA Position, Plaintiff has alleged that she is a member of a protected

class, that she applied for a job, and that she was rejected for that position; the remaining inquiry is whether she has plausibly pled that the surrounding circumstances permit an inference of race discrimination.  The task of establishing a prima facie case in a discrimination case has been described as a "de minimis" burden, Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001), and under some circumstances, it may be sufficient for a plaintiff to show that "the position was filled by someone outside [her] protected class."  Diaz v. New York City Transit Auth., 98 F. App'x 58, 59 (2d Cir. 2004).  As with her failure to provide the age of the successful candidate, Plaintiff's purported belief that he was male and younger than her clearly lacks any details regarding his race.  The lack of any relevant factual content regarding the successful candidate prevents an inference that his selection was the product of race discrimination.  In addition, there are no facts alleged concerning his possibly inferior qualifications that would permit an inference of discrimination to be drawn.  Without allegations regarding the chosen candidate's race or qualifications, Plaintiff cannot establish a prima facie case of race discrimination.

Furthermore, Plaintiff fails to plead any facts alleging that Mr. Fama possessed a discriminatory animus or any facts demonstrating why Ms. Meilick's alleged racism should be connected to Mr. Fama's decision to reject her application for the job.  See Vasquez v. Empress Ambulance Serv., Inc., 835 F.3d 267, 269 (2d Cir. 2016) (recognizing availability of cat's paw liability theory under Title VII); Holcomb v. Iona Coll., 521 F.3d 130, 143 (2d Cir. 2008) ("a Title VII plaintiff is entitled to succeed, even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the [decision-making] process").

This Court respectfully recommends that Plaintiff's motion to amend her complaint to

include a race-discrimination claim under Title VII for her 2020 denial of promotion be denied

with leave to replead if Plaintiff can meet all of the elements.

### F.  MTA As A Party

Plaintiff seeks to add the MTA as a party, alleging that while the LIRR is a "wholly

owned subsidiary of the MTA," PSAC ¶ 16, "both entities are essentially one integrated

enterprise insofar as they act as one entity with respect to the employment practices at issue in

this case," id. ¶ 5.  The September 23, 2020 announcement regarding consolidation of "Diversity

& EEO, Legal People [and] Labor Relations" between the MTA and its subsidiaries, id.

(alteration in original), suggests that at some juncture, there was an overlap of HR functions.

Beyond these broad allegations, Plaintiff provides specific allegations regarding the

MTA's involvement in one act–the denial of Plaintiff's application for the 2020 MTA Position.

As to this employment action, Plaintiff alleges an interplay between the LIRR and the MTA,

indicating that she seeks to hold the MTA liable for her claims related to that decision.  She

alleges that the individual who interviewed her for the position, Mr. Fama, id. ¶¶ 58, 87, served

as the Chief People Officer for both entities, id. ¶¶ 18, 88, and knew about the circumstances

surrounding Plaintiff's LIRR complaints and this case, see id. ¶¶ 60-61, 88-91.  To further her

claim that the MTA and the LIRR are an "integrated enterprise," Plaintiff alleges that Mr. Fama

"is the final step in a line of a direct reporting ladder above Plaintiff's level."  Id. ¶ 91.  In the

absence of any plausible allegations regarding the MTA's general control of the LIRR's

employment decisions prior to 2020, or its specific involvement in any of Plaintiff's earlier

employment actions, the Court addresses Plaintiff's request as one to add the MTA as to any

proposed cause of action arising from the denial of her application for the 2020 MTA Position.

Defendants argue that the LIRR is not a proper defendant for Plaintiff's 2020 failure-to-

promote claims because "[t]he LIRR is not alleged to have been involved in any way with Plaintiff's application for the role with the MTA." See Defs.' Opp. at 19.[15]  To the contrary, Plaintiff alleges that Mr. Fama held positions with both the MTA and the LIRR during the time of her application, suggesting that both entities acted in concert and took direct action.  She further alleges that by September 2020, there had been a consolidation of human resources functions between the MTA and its subsidiaries.

Defendants argue that the allegation that Mr. Fama held the same position with both entities is "inaccurate."  Defs.' Sur-Reply at 13.  Even if Defendants' unsupported statement were true, the mere fact that Mr. Fama was actually employed by only one of the two entities may not be dispositive.  Agency principles are often used in interpreting federal employment law.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754 (1998) (Title VII is interpreted "based on agency principles"); Menaker v. Hofstra Univ., 935 F.3d 20, 37 (2d Cir. 2019) (in cases arising under Title VII, "it is well-settled that employers may be held vicariously liable for the conduct of their agents"); see also Staub v. Proctor Hosp., 562 U.S. 411, 418 (2011) ("general principles of . . . agency law" provide a basis for an employer's liability under federal tort laws).  Under certain circumstances, an agent's conduct "is imputable to the employer under general agency principles."  Menaker, 935 F.3d at 37; see Staub, 562 U.S. at 421; ("[s]ince a

---

[15]In opposition to the motion, Defendants argued that Plaintiff had failed to exhaust her administrative remedies as to her claims regarding denial of the 2020 MTA Position.  Plaintiff subsequently filed an administrative claim with the EEOC, and she received a right-to-sue letter dated February 12, 2021.  See Pl.'s Reply at 1 n.1; ECF No. 68-1.  As such, for the purposes of this motion, the procedural defect is cured.  See Durand v. Excelsior Care Grp. LLC, No. 19 Civ. 2810 (KAM) (SJB), 2020 WL 7246437, at *7 (E.D.N.Y. Dec. 9, 2020) (where plaintiffs failed to obtain a right-to-sue letter before commencing litigation, "plaintiffs' procedural defect is cured because plaintiffs attached the right-to-sue letter in opposition to defendants' motion").

supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it . . . .").  Thus, taking the allegations in the complaint as true, as the Court must at this stage, Plaintiff has sufficiently pled that Mr. Fama was acting as an agent of the LIRR and/or the MTA when he denied Plaintiff's promotion to the 2020 MTA Position.

Defendants further argue that the LIRR is not liable for any claim related to the 2020 MTA Position because under New York law, the MTA and the LIRR are separate employers and entities and "the actions by an MTA employee cannot be imputed to LIRR."  See Defs.' Opp. at 16, 18 (citing N.Y. Pub. Auth. L. § 1266(5)).  Section 1266(5) "specifies that the MTA's subsidiary corporations are distinct entities.  Each subject to suit and each are responsible for maintenance and repair of their own facilities, not the MTA."  Pappalardo v. Long Island R.R. Co., 11 Misc. 3d 744, 749, 813 N.Y.S.2d 883, 886-87 (Sup. Ct. Kings Cnty. 2006), aff'd, 36 A.D.3d 878, 829 N.Y.S.2d 173 (2d Dep't 2007).  Further, § 1266(5) states that "[t]he employees of any such subsidiary corporation, except those who are also employees of the [MTA], shall not be deemed employees of the [MTA]."  N.Y. Pub. Auth. L. § 1266(5).

To the extent the LIRR relies upon New York Public Authorities Law § 1266(5) regarding the legal relationship between the LIRR and the MTA to insulate it from suit based on the 2020 MTA Position discrimination claim, that reliance is misplaced.  Section 1266(5) has typically been applied where one of the two entities had no relationship with the underlying cause of action, or where the MTA was sued only in its capacity as the parent organization.  For example, in tort actions, the MTA has been found not responsible for injuries suffered at one of its subsidiaries' locations.  See Mayayev v. Metro. Transp. Auth. Bus, 74 A.D.3d 910, 911, 904 N.Y.S.2d 84, 86 (2d Dep't 2010) (where the plaintiff suffered personal injuries on a bus run by the MTA Bus subsidiary, noting that the MTA "and its subsidiaries must be sued separately, and

47

are not responsible for each other's torts"); Noonan v. Long Island R.R., 158 A.D.2d 392, 393, 551 N.Y.S.2d 232, 233 (1st Dep't 1990) (dismissing claim against the MTA where property and equipment where injury occurred were "owned, operated and maintained by the LIRR . . . a wholly owned subsidiary corporation" of the MTA).  The statute does not, however, bar the application of the traditional agency principles outlined above.  See Montez v. Metro. Transp. Auth., 43 A.D.2d 224, 226, 350 N.Y.S.2d 665, 667 (1st Dep't 1974) (the MTA cannot "be held liable for the torts committed by the [LIRR] in the absence of a factual showing that the [LIRR's employee] had, in some manner, become the [MTA's] agent").  Plaintiff's claims here arise in the employment-discrimination context and include allegations of action by both entities in regard to the 2020 MTA Position.  Nothing in the statute suggests that one entity is absolved from responsibility when a plaintiff alleges joint action by both entities.

The conduct of the LIRR and the MTA in denying Plaintiff the 2020 MTA Position is alleged both as a discrete discriminatory act, and as an act taken in retaliation for Plaintiff's prior complaints of discrimination.  As common questions of law or fact will undoubtedly arise, the allegations and claims are sufficiently related to permit joinder of the MTA.  See Allen v. Kunkel, No. 18 Civ. 297 (JCH), 2018 WL 1605145, at *3 (D. Conn. Apr. 3, 2018) (permitting joinder of ten new defendants where allegations of infringement on freedom of religion and claims overlapped with current defendants); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) ("Joinder of claims, parties and remedies is strongly encouraged" under the Federal Rules of Civil Procedure.); Perez v. Hawk, 302 F. Supp. 2d 9, 17-18 (E.D.N.Y. 2004) ("Given the related nature of the plaintiff's complaints against [multiple defendants], the Court sees no reason to waste judicial resources by trying two similar cases separately before two courts.").  The interests of judicial economy will also be served by litigating Plaintiff's

employment-related claims in one case.

The allegations regarding the MTA's conduct, however, are limited to the circumstances surrounding the decision to deny Plaintiff's application for the 2020 MTA Position. This Court thus respectfully recommends that the MTA be permissively joined only as to the retaliation claim, and, to the extent Plaintiff successfully repleads it, the discrimination claim regarding the denial of her application for the 2020 MTA Position.

## IV.    CONCLUSION

For the reasons stated above, this Court respectfully recommends that Plaintiff's motion for leave to file her proposed amended complaint be: (1) **GRANTED** as to proposed Count III for retaliation under Title VII and the ADEA; (2) **DENIED** with prejudice as to proposed Count VI for age discrimination as to the 2017 Position; and (3) **DENIED** without prejudice and with leave to replead as to (a) proposed Count III for retaliation under § 1983; (b) proposed Count IV for retaliatory hostile work environment; and (c) proposed Count V regarding the denial of her application for the 2020 MTA Position. The Court also respectfully recommends that the MTA be joined as a party as to any surviving claim concerning the 2020 MTA Position. If the District Court accepts the recommendations above, the MTA would be joined as to the retaliation claim concerning the 2020 MTA Position, and the discrimination claims only should Plaintiff adequately replead those claims.

Within 20 days of the District Court's adoption of this report and recommendation, if it so adopts it, Plaintiff shall file and serve a revised amended complaint that conforms with the District Court's decision on this report and recommendation. On the filing of the amended complaint, the Clerk of the Court is requested to amend the caption to add the MTA as a defendant. Within five days of the adoption of this report and recommendation, if it occurs,

49

Defendants' counsel is to inform Plaintiff's counsel whether they will accept service for the MTA, or if they will not, to provide the proper service address for the MTA. Plaintiff is to timely serve the MTA.

## V.    OBJECTIONS

A copy of this report and recommendation is being provided to the parties via ECF. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated:  Brooklyn, New York
          January 12, 2022

*Vera M. Scanlon*

_____
          VERA M. SCANLON
          United States Magistrate Judge